May it please the Court, Brian Razor of Gonzales and Lay, along with co-counsel Whitney Lay and of co-counsel Jim Hammer for Appellant David Serena. Appellant is here today requesting that this Court reverse the Court below's grant of summary judgment for two reasons. First, the Yolo County Superior Court has and continues to employ a process for selecting a grand jury that is entirely subjective and at all stages of the process susceptible to abuse. The judges charged with administering the system have little idea how the selection process works and have delegated the responsibility for administering the system to an unsupervised, untrained county employee. The one place where the judges seem to meaningfully participate in the process is in the final interview. Two judges of the Superior Court who have recently been presiding judges have testified that the only purpose of that interview is to see if the candidates possess the legal qualifications to serve on the grand jury. Could I ask you about standing first? Sure. One of the items, the third prong of the standing analysis is that we could fashion a judgment that would provide relief to the plaintiffs, right? Right. Since the plaintiffs have notice of how to get on the grand jury and none of them have applied to be on the grand jury and Serena is no longer head of the Yolo County Housing Authority, what relief could we provide that would in any way directly help him as opposed to Hispanics in general? Well, third party standing which the Supreme Court has recognized in a number of contexts exists where... So are you basing your justiciability argument on third party standing? We have three independent standing arguments. The first of which is that the appellants in this case as well as all other Hispanic residents of Yolo County have been denied notice of the opportunity to apply for grand jury service. The second... Okay, so on that one. Yes. Now they've been given notice. I will submit that there is a potential mootness problem there although that is grounds for standing in the initial matter. With respect to third party standing, the Supreme Court has recognized... Wait a second. I think... What about the fact that even though their complaint only talked about notice, what they really were alleging was flaws in all the procedures leading to the ultimate selection of the grand jury. So that would still, even though they've been given notice, that wouldn't remedy the other flaws in the process, correct? Well, everything stems from the initial recruitment process of the grand jury. This is not a system where motor voter rules, for example, are used to mail out notice to a random cross section of Yolo County. It is sent to a list that is entirely in the subjective discretion of the jury commissioner of Yolo County. So as an initial matter, no one's going to apply... Right, but you aren't. Aren't you also challenging the other aspects of the process? Yes, and everything flows from that initial... First of all, I'm saying that, okay, so your argument would be that it's really not moot because even though they've had notice, that there's other problems with the system that they're seeking to litigate that still exist. True, and that exists... And they haven't changed that, so that part is not moot. And they have no intention of changing anything by their own admission. And on the third... We need to focus. I'm going to focus you systematically on these arguments because they are of concern. All right, so that's the first... It's not... Okay, let's assume it's not moot. Let's go to your third party standing. Yes. Mr. Serena has standing on behalf of all Hispanic residents of Yolo County, as the Supreme Court has recognized, because it's a distinct group within society. It's not the situation of taxpayer standing, for example. Every Hispanic resident of Yolo County has a distinct interest in having the grand jury of the county be a fair and adequate representation of the community that it represents. And the Supreme Court has recognized this in a number of contexts, particularly in the context of racial discrimination. The fellow Hispanic residents of Yolo County who have no notice of the opportunity to apply for the grand jury obviously can't challenge those notice procedures. They don't know of them to begin with. Mr. Serena represents those Hispanic members of Yolo County who can't possibly seek to change the system in that they don't know that there is a problem with the notice procedures to begin with because they don't know of the opportunity to apply for grand jury service. Now, what's the relief you're requesting that will remedy that? We're requesting specifically the notice. You're requesting what now? Notice? That proper notice be given? Yes. Is proper notice being given now? Notice is being given in whatever way on a year-to-year basis the jury commissioner decides she wants to do it. Sending it to a list of, a random list of residents of Yolo County. A couple of community organizations of her choice. The judges of the court who are charged with administering the system have admitted that they take no interest and no supervision. You're asking us to instruct the judges of the county to come up with a program to provide adequate notice. Is that it? To fulfill their responsibilities under California's government code to supervise the administration of the grand jury system, a responsibility which they have totally abdicated. Well, actually, wouldn't the best you can get from us is to reverse the district court and send it back to hold a hearing as to whether the county can meet, rebut the presumption of intentional discrimination? Exactly, Your Honor. Yes. So it may be that it goes back to the district judge and the district judge says, well, they tell all the prominent Hispanic agencies and they give notice in all the papers, so there's no intent to discriminate. And so you ultimately may lose even if we reverse it. That's true, Your Honor. Yes. Getting back to third-party standing, don't you, to satisfy third-party standing, don't you still have to satisfy Article III standing? And one of the elements is the substantial likelihood that the request of relief will address or prevent the injury? Yes, we do, Your Honor. And you also have to show the first element, that the litigant has suffered an injury in fact? Yes. Well, if the injury about notice to the particular litigant, that is CERNA, is moved, but the other parts aren't moved, but he hasn't applied to be on the grand jury, how does he have an injury in fact where he could be the person who represents all the Hispanics? There's no specific case on point to address third-party standing in the context of mootness, but I think a really appropriate analogy comes from Sosna v. Iowa, which talks about third-party standing in the class context. And mootness is not an issue if the controversy remains alive as the other class members and will escape repellent review, because as to the representative class member, the issue may be moot. But isn't your problem more the moot-slot problem, that he never applied to be a grand juror? Not in the... So how could he be, you know, in terms of Article III standing? In the context, well, third-party standing is a corollary... He still has to show an injury to himself. And the injury to himself was that he did not receive notice of the opportunity to apply for grand jury service. And as the class representative, essentially in this analogy... So he couldn't apply. So this is just, so it would be applying the standard to a new situation. It's kind of a novice. He couldn't apply because he didn't have notice. So even though they've given notice now, it's irrelevant that he hasn't yet applied? Well, in the context of third-party standing, he's a representative for all those other Hispanic residents of Yolo County who have not received notice of the opportunity to apply. That he hasn't applied? And therefore can't challenge the system. I mean, no one can ever challenge the notification procedures of a jury selection process in that case, because once you become notified of the opportunity to apply, you can't be injured by the lack of notice, and therefore can't challenge the notice provision. All right. You better spend some time on the merits. I just wanted that case. You said Sosna v. Iowa. Sosna v. Iowa. It's 419 U.S. 393, Your Honor. 393? Yes. So the judges of the Superior Court have testified that they look only to the legal qualifications of prospective grand jurors when conducting these interviews, when in reality they have eliminated actual qualified Hispanic applicants for being things such as shy or not a leader or for no listed reason whatsoever. Moreover, the grand jury in any given year is filled with almost half holdover grand jurors from the previous year's grand jury. There are two things that I see when we get to the merits. One is the Suss the Wall case, where it talks about the absolute, 7-point-something percent of absolute disparity, and then the other item is the significant period of time, whether it's three years or whether it's 10 years. Get around the Suss the Wall case. Don't we need a number on it? I'm sorry? Don't we? I mean, can we do it as three judges or? Well, I don't think that you need to overrule Sotus Watt in order to address the merits of this case. Both Sotus Watt and Rodriguez-Lara, which are the two main cases from this circuit that give tangible numbers of absolute disparities, Rodriguez-Lara being that 14.5 percent is constitutionally significant. Sotus Watt, 7.7 percent is not constitutionally significant. Both those cases were entirely neutral systems that used the motor voter rolls or motor vehicle registration. But haven't our cases say that if it's less than 7.7 percent or less, then there's no presumption of intentional discrimination? They have not explicitly so held, Your Honor. They have suggested that 7.7 percent in these neutral contexts is not enough to show a constitutional violation. Well, do they say that in a neutral context? Or is that the spin you're kind of putting on it? I suppose that's my analysis of the law. That's your analysis of the facts, where they came up with that rule. But we still have to grapple with the principle that was enunciated, which is 7.7 percent or less is not substantial. I don't believe that that's been the explicit ruling of this Court, that it's categorically not substantial under 7.7 percent. In Castaneda v. Partita, the Supreme Court has a third prong to this test, which is... And so it could be that our cases have gotten off track in applying Castaneda. And if that's the case, then wouldn't we have to go en banc to deal with that? Well, I don't believe that Sotus Watt needs to be overruled in order for this Court to be able to do that. I think that the 13.5 percent absolute disparities between grand jury-eligible members and their representation on the grand jury over the past three years is nearly that which was deemed constitutionally significant in Rodriguez-Lara, despite the fact that these numbers necessarily restrict the data of Hispanics in Yolo County more so than age-eligible population data does. I mean, it's an area where there's a lot of different factors that play into what these numbers really come out to in the end. And 13.5 percent over three years is constitutionally significant in Appellant's opinion. The Court in Perez v. United States, albeit the Eleventh Circuit, has said that four years, for example, is a substantial period of time for purposes of equal protection analysis under Castaneda v. Partita. But in your last three years, actually, it has the third year back, it's the worst. And then it actually gets better and is going closer towards the 7 percent. It's 8 point something. I charted it out, so yes, in 04-05, it was 16.5 percent. 05-06 was 14.6 percent. 06-07, it was 8.4 percent. I believe it's 9.1 percent in 06-07, Your Honor, and 2.4 in 05-06 and 0 in 04-05. I'll have to go back and look. But the fact is, even over the three years, it's not, like, steady. It seems to be progressing to be better. And certainly there's a certain amount of play in these numbers, and there is an amount of underrepresentation that is constitutionally permissible. What happens if we took the four-year period? The four-year period is 10.4 percent, which stands sort of squarely in the gray area of this Court's law, coupled with a system susceptible to abuse, which under Casaneda is supposed to bolster any statistical showing, is, I believe, constitutionally significant. I believe, does this represent my reserve time? You have a minute and a half left. Okay. But you might want to reserve it and see what the other side has to say. Okay. Thank you, Your Honor. Why don't they have third-party standing? A couple reasons, Your Honor. By the way, I'm Paul Kane for the appellees, the Yolo County judges, Mock and Werner and the commissioner, Jury Commissioner Weaver. I think there's a serious question as to whether they even preserve the argument for third-party standing, because that's not a theory they articulated until their reply briefing. We have to respond to a resolver on jurisdiction, so it's something we need to consider. Whether or not they made the argument either way, we need to decide whether we can even consider the merits of the case. The question is, for third-party standing purposes, whether, as you indicated, there's Article III standing to begin with. These are persons who now know, if they didn't already, how to apply. They didn't apply. So I think the case should be both fail for lack of Article III standing as to the claimants and mootness. But they didn't have notice, and so they were deprived of the opportunity to apply in the first place. And the people who the third parties who they're representing were deprived of the notice to apply and so couldn't apply, may not even know that this grand jury exists. And that might be a persuasive response if they had brought a class action in which they purported to. I'm not trying to persuade you. You're trying to persuade me. I'm asking a question. Thank you, Your Honor. If they had brought a class action, then they would have the ability to invoke the argument that the Sosna v. Iowa litigant made, which is, yes, the case has become moot as to me, but it continues to not be moot as to other persons in the class. And what we have here are individual litigants bringing an individual claim. No class action case here. This is not a class action. They didn't bring it as a class action. And that, I think, is the dispositive response. They're not representing anyone. They're asking they said they wanted to get on to a grand jury that they never sought to get on, and they know full well how to get on. I'd like to focus on two. Do you think they would have made it past the interview? Pardon me? Do you think Mr. Cerner would have made it past the interview? I don't want to speculate, Your Honor. I'd like to focus on what I think are two key concessions made in their brief. The first is on page 8 of their reply brief, where they concede that the exclusion of prospective grand jurors who fail to volunteer for grand jury service is not an issue of constitutional significance. This is a volunteer case. This is not a case in which, as in Castaneda, where a key man identified persons to solicit. This is a volunteer case. And they've conceded in their brief that whatever disparity may result from the failure to volunteer is not an issue of constitutional significance. So what they have to show is that my clients, the YOLO judges and the jury commissioner intentionally did something to produce a disparity. Counsel said in his opening remarks that he wanted to bring a lawsuit to get the judges to fulfill their responsibilities under the government code. That's not the cause of action they brought. They brought a cause of action alleging intentional discrimination, and they have to show intentional discrimination. So what did they show? They said, well, Hispanics did not receive notice of the opportunity to serve. Well, what evidence is there of that lack of notice? There is none. YOLO County demonstrated that notice went out in numerous ways. Well, the way they're showing it is by the disparity. They're saying that if it went out to places that Hispanics would receive the notice, then they would normally apply, theoretically apply in the same numbers that Caucasians would apply. And that rests on a fallacy. You cannot presume that everyone will be interested in an opportunity. But isn't that something beyond what we're dealing with? All we're dealing with is whether the district judge was correct on the standing issue and also on whether they had made out a prima facie case, shifting the burden to you to justify the system. I mean, you could say, look, we put it in all the Spanish newspapers. We posted it in all the Spanish churches. We did everything. You could say that, but we're not to that point. Do you see what I mean? So what they're saying is that we have a prima facie case that shifts the burden by showing the absolute disparity. And they're saying if you look at the last three years, the absolute disparity is such that something stinks here switching the burden to you. And the response to that, Your Honor, is that that's exactly the argument that the plaintiffs made in the Ward's Cove case back in the 1980s, an employment discrimination case where the plaintiffs alleged, well, of course the minority groups would have applied for those jobs in proportion to their numbers, but they never proved that they did. And this Court ruled for the plaintiffs in that case, and the Supreme Court reversed. The Supreme Court said it's not an appropriate assumption to presume that a group is going to apply in proportion to the numbers. And if there's equal notice to everybody, assuming equal notice to everybody, then I agree with you. But that's what they're saying. There was an equal notice. But that's what their theory was. But what's their evidence? There is no evidence about who actually received notice. There's simply no evidence in the record that supports the claim that Hispanic citizens didn't receive notice in at least the same proportion as their numbers. But that's the thing. We're going in circles here. That's what they're supplying by their statistics. No, the statistics showed who actually decided to apply. But the unspoken fallacy in their argument is the presumption that persons will apply for an opportunity in proportion to their numbers. Well, no, the numbers just show that here's the eligible population to serve on the grand jury of the Hispanic community in the county, and here's the percentage that's on the grand jury, and it's disproportionate to such a degree that it shifts the burden to you to say, well, that's because they didn't volunteer. No, the burden is on them to demonstrate intentional discrimination. And everybody had the opportunity to volunteer. They could have introduced, for example, let's say a survey. They could have had a survey. If they had a 30 percent absolute disparity, wouldn't that shift the burden to you to show that there was no intentional discrimination? No, because it's a voluntary choice of individuals to apply. Do you have any case that says that, where it's a volunteer case, that the absolute disparity is irrelevant? They conceded the point in their brief that voluntary decisions not to apply are simply not a constitutional issue. So all this argument flows from what you consider a concession in their brief? Not a case? You don't have a single case on this? In any context, the burden of showing intentional discrimination rests with the plaintiff to show that the defendant did something to produce a disparity. I suggest what they should have done. If they wanted to show that notice was defective, they should have had a survey expert survey the residents of Yolo County to find out whether there was a difference in the number of people who did  We're not just talking about notice. We're also talking about the whole process, the various points in the process. And they have two other complaints about the process. One is the holdover issue, and one is the interview issue. And on the holdover issue, that actually leads to the second concession in their briefs. Page four of their opening brief, they concede that holdovers are automatically ceded on the following year's grand jury without any oversight from the jury commissioner or the judges. So, in other words, it's just as the application process is a voluntary choice, the decision to holdover also is a voluntary choice. State law permits up to ten grand jurors to holdover, and that makes sense because there's some institutional... How do you know how many wanted to holdover? There's no evidence in the record that any person who wanted to holdover, Hispanic or otherwise, was denied that opportunity. Say 12 people want to holdover. Who decides who the two that don't get the holdover? It never arose. Over the ten-year period studied, the maximum number of holdovers was nine, and the average was five. That's not an issue? That's not an issue. We don't have any law on what's a significant period, so how do we know we should apply the ten-year versus the three-year? Well, we should take the ten-year because that's the period that the plaintiffs originally said was the right period. And when the numbers didn't look the way they wanted, they said, well, no, it should be three and it should be this particular three, but we ought to leave out that one. I mean, now they're trying to gerrymander the relevant period. Ten years is the period where substantially the same jury selection system, grand jury selection system, has been in place. And I think that's that. If you're going to draw a conclusion based on statistics and inferences to be drawn from them, it has to be a goodly number. Even in Castaneda, which was a key man case and a very different case from a voluntary situation like what we have, the court emphasized the great risk of random fluctuations from year to year. So if there is a disparity in who is holding over, again, it's a function of individual choice. With respect to the interview process, again, plaintiff showing was simply defective. They contend that there were a few individuals, persons who applied, who were rejected based on the interview, based on qualifications, and it's not unreasonable for a county to want to have grand jurors who the court felt were appropriately entrusted with that great responsibility. There's nothing illegal about having an interview. What is the evidence about the interview process here? They identified one Hispanic man who was not included because the interviewing judge found him to be not real interested in the job, and another Hispanic man who was thought not to be a leader, he was more of a follower. So what evidence of discrimination arises from that? Well, first, there's no comparative evidence. Comparative evidence would be, for example, if there were a showing that shy or disinterested Caucasians were nevertheless allowed to serve. There's no evidence of that. But if they didn't disallow him, there wouldn't be the forum that said he's shy, he's not a leader. No, the forums actually note very favorably, including for numerous Hispanic individuals. For example, Mr. Leo Lopez, the forum says, oh, he would be an excellent choice. Joe Martinez, he's very thoughtful. Mary Ann Aguayo, she would be a terrific grand juror. So the forums do not note just who's excluded, but also who's affirmatively endorsed. Were there any of the Caucasians that they noticed anything about their leadership skills? Every Caucasian was a leader. There was no reference to leadership skills with respect to anybody. There was no showing that anybody, Judge Shy, for example, a Caucasian, was nevertheless permitted to. So didn't Judge Damrell make a statement in his opinion warning the county that they're playing with fire here because the last three years shows absolute disparity? And if that's the case, shouldn't the county correct this before they return indictments and have those indictments thrown out? He did say that. And I think it's fair to say that everyone read his opinion and is very cognizant of what he said. He's still not going to change the system voluntarily. No, that's not true. It's not in the record, but I know from my own personal experience about subsequent to this, an even greater amount of outreach efforts made to Hispanic groups and other diversity groups in the community in order as kind of an affirmative action outreach to induce additional applicants to participate. But let me talk further, if I might. Is there any jail pending or any proposed amendment to alter the way that this is a procedure, a role pending or being considered to alter the way this is handled? I'm not aware of any, Your Honor. Okay. Again, focusing on the interview process, what they needed to have shown is some comparative evidence or even some statistics by which to show that the process, that component of the process disproportionately affects one group or the other. And they didn't do it. There's simply no evidence. There is evidence of persons who are apparently Caucasian or at least are not Hispanic surnamed, persons who were excluded, just as a couple stray Hispanics also were excluded. But there was no effort on the plaintiff's part to put on either comparative or statistical evidence focusing on that particular aspect of the selection process to show that it had any adverse effect on Hispanic representation. So what they have done, in effect, is pointed to one or two persons who they say were discriminated against. The court says they weren't. But as the Supreme Court said in the Teamsters case, you don't prove systemic discrimination simply by anecdotes. If you're going to allege a systemic violation, you have to prove a systemic violation. And here there was none. So my position is that the plaintiffs alleged that Hispanics failed to receive notice in proportion to their numbers. They never attempted to prove that. And they never introduced any proof showing that any other component of the selection process had any adverse impact at all, let alone that it revealed intentional discrimination by anyone. With respect to the disparity, I guess the last thing I'd point out about the plaintiff's briefing is here not what's in it, but what's absent from it. The plaintiffs are trying to, you know, change the fact that depending on whose expert you listen to, it's 4.9 percent or 5-point-something percent. But they have simply failed to deal with the fact that this court already has, in Torres-Hernandez and Esquivel, rejected the very argument they're making. And the argument they're making is that, well, don't look at grand jury eligible data. Look at some more generalized data. And as those cases say, those cases have explicitly rejected that contention. You do use grand jury eligible data if that's available. And that's the most appropriate comparison. And under that data set, they simply lose, unless the court has questions. They lose because we have the rule, the 7.7 rule. Well, I think there's a lot of different routes you get to the same result. I don't think you even get to the percentage issue, if you agree with my argument, that they simply haven't proven what they set up. Are you arguing that those cases are good law? Yes. Okay. Thank you. Just a few quick points to respond to the appellee's points. First, with respect to the interview process, Judge Mock, who rejected the Hispanic applicant for being shy and not a leader, explicitly said in his deposition testimony that the only qualifications he looked for in the interview process were the legal qualifications, which are age, English language ability, citizenship, non-felon status, and resident in the county. He testified explicitly that's the only thing he looked for in the interview process. And yet he rejects a Hispanic applicant for grand jury service for being shy and not a leader. Second of all, with respect to the holdover process, it's true that ten grand jurors can be held over to the next year's grand jury, but it's not totally a personal choice. California government code demands that the judges invite those members back to serve on another year's grand jury. Is there any evidence that they didn't invite a Hispanic? They said they don't pay any attention to it whatsoever. They said both the jury commissioner and the judges have completely abdicated that responsibility and don't know how that's... Is there any evidence that any Hispanic who wanted this held over was not held over? Not at this time, Your Honor. So it seems to me that... And finally, in terms of the systematic violation concept that he talked about, that's shown through the statistics in this case. That's shown through the fact that it's almost a 14 percent disparity over the last three years and ten and a half percent over the last four years. And I thank you, Your Honor, for your time. All right. Thank you, counsel. Serena v. Locke is submitted, and this session of court will be adjourned for today. All rise. This court is adjourned. Thank you. Thank you.
judges: Thompson, Wardlaw, Moskowitz